Citation Nr: 1522736 
Decision Date: 05/29/15 Archive Date: 06/11/15

DOCKET NO. 13-29 029 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in White River Junction, Vermont


THE ISSUES

1. Entitlement to a rating for anxiety disorder not otherwise specified (NOS) and major depressive disorder (formerly evaluated as PTSD and major depressive disorder) in excess of 50 percent prior to November 4, 2013, and in excess of 70 percent thereafter.

2. Entitlement to a total disability rating based on individual unemployability due to service-connected disability (TDIU).


REPRESENTATION

Appellant represented by: Allen Gumpenberger, Agent


ATTORNEY FOR THE BOARD

S. Gordon, Associate Counsel 

INTRODUCTION

The Veteran served on active military duty from November 1988 to November 1992. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a November 2011 rating decision of the Department of Veterans Affairs Regional Office (RO) in White River Junction, Vermont. 

In a December 2013 rating decision, the RO awarded the Veteran a 70 percent disability rating for her anxiety disorder NOS and major depressive disorder (formerly evaluated as PTSD and major depressive disorder) effective November 4, 2013. Because the subsequent rating decision awarded a higher rating, but less than the maximum available benefit, the increase granted does not abrogate the pending appeal. AB v. Brown, 6 Vet. App. 35 (1993). The claims currently on appeal were denied in a December 2013 supplemental statement of the case (SSOC). Accordingly, the Veteran's VA claims folder has been returned to the Board for further appellate proceedings.

In addition to the paper claims file, there is a Virtual VA and VBMS (the Veterans Benefits Management System) paperless claims file associated with the Veteran's claims. The documents in these files have been reviewed and considered as part of this appeal.


FINDINGS OF FACT

1. Resolving all reasonable doubt in the Veteran's favor, throughout the appeal her anxiety disorder NOS and major depressive disorder has been productive of occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood; however, the preponderance of the evidence shows that the Veteran's anxiety disorder NOS and major depressive disorder does not more nearly approximate productive of disability analogous to total occupational and social impairment.
2. The Veteran is not precluded from gainful employment for which she is qualified due solely to service-connected disability. 


CONCLUSIONS OF LAW

1. The criteria for a rating for PTSD of 70 percent, and no higher, have been met throughout the appeal. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 4.3, 4.7, 4.130, Diagnostic Code 9411 (2014).

2. The criteria for a TDIU are not met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.340, 3.341, 4.16 (2014). 


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Duties to Notify and Assist

Upon receipt of a substantially complete application, VA must notify the claimant and his representative of any information, medical evidence, or lay evidence not previously provided to VA that is necessary to substantiate the claim. The notice must: (1) inform the claimant about the information and evidence not of record that is necessary to substantiate the claim; (2) inform the claimant about the information and evidence that VA will seek to provide; and (3) inform the claimant about the information and evidence the claimant is expected to provide. 38 U.S.C.A. §§ 5103, 5103A, 5107 (West 2014); 38 C.F.R. § 3.159 (2013); Pelegrini v. Principi, 18 Vet. App. 112 (2004). 

In this case, the Veteran was given the required notice in letters dated in June 2011 and July 2011.

Thus, VA has satisfied its duty to notify the appellant and had satisfied that duty prior to the adjudication in the most recent December 2013 supplemental statement of the case. 
II. Analysis

The Board also finds that the duty-to-assist requirements have been fulfilled. All relevant, identified, and available evidence has been obtained, and VA has notified the appellant of any evidence that could not be obtained. The appellant has not referred to any additional, unobtained, relevant evidence. VA has obtained VA examinations with respect to the rating issues on appeal. Thus, the Board finds that VA has satisfied the duty-to-assist provisions of law. No further notice or assistance to the Veteran is required to fulfill VA's duty to assist him in development. Smith v. Gober, 14 Vet. App. 227 (2000); Dela Cruz v. Principi, 15 Vet. App. 143 (2001); Quartuccio v. Principi, 16 Vet. App. 183 (2002).

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities (Rating Schedule) and are intended to represent the average impairment of earning capacity resulting from disability. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. Disabilities must be reviewed in relation to their history. 38 C.F.R. § 4.1. Other applicable, general policy considerations are: interpreting reports of examination in light of the whole recorded history, reconciling the various reports into a consistent picture so that the current rating may accurately reflect the elements of disability, 38 C.F.R. § 4.2; resolving any reasonable doubt regarding the degree of disability in favor of the claimant, 38 C.F.R. § 4.3; where there is a question as to which of two evaluations apply, assigning a higher of the two where the disability picture more nearly approximates the criteria for the next higher rating, 38 C.F.R. § 4.7; and, evaluating functional impairment on the basis of lack of usefulness, and the effects of the disabilities upon the person's ordinary activity, 38 C.F.R. § 4.10. See Schafrath v. Derwinski, 1 Vet. App. 589 (1991).

In general, the degree of impairment resulting from a disability is a factual determination and generally the Board's primary focus in such cases is upon the current severity of the disability. Francisco v. Brown, 7 Vet. App. 55, 57-58. In Fenderson v. West, 12 Vet. App. 119 (1999), however, it was held that the rule from Francisco does not apply where an appellant has expressed dissatisfaction with the assignment of an initial rating following an initial award of service connection for that disability. Rather, at the time of an initial rating, separate ratings can be assigned for separate periods of time based on the facts found - a practice known as 'staged' ratings. Fenderson, 12 Vet. App. 119.

When evaluating a mental disorder, the rating agency shall consider the frequency, severity, and duration of psychiatric symptoms, the length of remissions, and the Veteran's capacity for adjustment during periods of remission. The rating agency shall assign an evaluation based on all the evidence of record that bears on occupational and social impairment rather than solely on the examiner's assessment of the level of disability at the moment of the examination. When evaluating the level of disability from a mental disorder, the rating agency will consider the extent of social impairment, but shall not assign an evaluation solely on the basis of social impairment. 38 C.F.R. § 4.126.

The symptoms recited in the criteria in the rating schedule for evaluating mental disorders are "not intended to constitute an exhaustive list, but rather are to serve as examples of the type and degree of the symptoms, or their effects, that would justify a particular rating." Mauerhan v. Principi, 16 Vet. App. 436, 442 (2002). In adjudicating a claim for an increased rating, the adjudicator must consider all symptoms of a claimant's service-connected mental condition that affect the level of occupational or social impairment. Id. at 443.

Analysis

By way of history, prior to November 4, 2013, the Veteran's anxiety disorder NOS and major depressive disorder was rated 50 percent disabling, and since November 4, 2013, her anxiety disorder NOS and major depressive disorder is rated as 70 percent disabling, under 38 C.F.R. § 4.130, Diagnostic Codes 9434-9411. 

Under the General Rating Formula for Mental Disorders, a 30 percent rating will be assigned when there is evidence of occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and normal conversation), due to such symptoms as: depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, and mild memory loss (such as forgetting names, directions, and recent events). Id.

A 50 percent evaluation will be assigned with evidence of occupational and social impairment with reduced reliability and productivity due to such symptoms as: a flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; and difficulty in establishing and maintaining effective work and social relationships. Id. 

A 70 percent evaluation applies when a veteran's occupational and social impairment reflects deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near continuous panic or depression affecting the ability to function independently, appropriately, and effectively; impaired impulse control; spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances; or an inability to establish and maintain effective relationships. Id.

A 100 percent rating is assigned when there is total occupational and social impairment, due to such symptoms as gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; and memory loss for names of close relatives, own occupation, or own name. Id.

Psychiatric examinations frequently include assignment of a GAF score, which is defined by DSM-IV as number between zero and 100 percent, that represents the psychological, social, and occupational functioning of an individual on a hypothetical continuum of mental health illness. Higher scores correspond to better functioning of the individual. The GAF score and the interpretations of the score are important considerations in rating a psychiatric disability. See, e.g., Richard v. Brown, 9 Vet. App. 266, 267 (1996); Carpenter v. Brown, 8 Vet. App. 240 (1995). However, the GAF scores assigned in a case, like an examiner's assessment of the severity of a condition, are not dispositive of the rating issue; rather, the GAF score must be considered in light of the actual symptoms of the Veteran's disorder, which provide the primary basis for the rating assigned. See 38 C.F.R. § 4.126(a).

A GAF score of 61 to 70 is indicative of some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships. A GAF score of 51 to 60 is indicative of moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with co-workers). A GAF score of 41 to 50 is indicative of serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). A GAF score of 31 to 40 is indicative of some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas such as work or school, family relations, judgment, thinking or mood (e.g., depressed man avoids friends, neglects family, and is unable to work).

A July 2011 VA PTSD examination report shows that the Veteran reported working from August 2003 to August 2006 with a kitchen company in sales. She then moved on to work with the Connecticut Department of Veterans Affairs as a Veteran's service officer from January 2007 through April 2010. She then decided to make a career move to be the director of sales and marketing with Benchmark Senior Living and worked there from April 2010 until February 2011. The Veteran then decided to return to work as a Veterans Advocate Supervisor at Alpha Disability in March 2011 through April 2011. She reported that she was overwhelmed with her son's psychiatric illness and her mother going into dementia as well as her own psychiatric illness becoming too great for her to continue working, and prior to being fired she decided to leave her job as a Veterans Advocate Supervisor. She was currently unemployed. She reported having to discontinue working at competitive employment in April 2011 due to multiple factors including taking care of her mother who had dementia, managing her son's psychiatric care and rehabilitation, and because her own depressive symptoms were becoming more significant.

Concerning psychiatric symptoms, the examiner determined that the Veteran did not describe enough symptoms consistent with a diagnosis of PTSD. Specifically, her symptoms of avoidance were directly related to her depression and not PTSD. Also, her symptoms of increased arousal were specifically related to her symptoms of depression and not PTSD, including her disturbed sleep, irritability, and her concentration. The Veteran stated that she had trouble sleeping and that her family situation regarding both her son and mother being psychiatrically disabled were greatly impacting her ability to fall asleep and stay asleep. She reported that any nightmares that she had included themes of her mother and of her son. The Veteran also reported that her marriage had not been significantly impacted by her own mental disorder but that she and her husband were not suited for each other and she found that her husband was not as supportive as she would have liked. She reported not having a significant number of friends, but that she never had many friends even prior to military service. She was independent in all activities of daily living and instrumental activities of daily living and her finances at the time were stable.

Upon mental status examination, the Veteran was adequately-groomed and casually-dressed. She was alert and oriented in all spheres and rapport was established quickly and maintained throughout the evaluation. She reported her mood as "lousy." Affect was dysthymic. Eye contact was appropriate. Speech rate, tone and volume were within normal limits. Speech content was logical and goal directed. She was appropriate and cooperative during the evaluation. The Veteran also denied auditory, visual, tactile, and olfactory hallucinations and other symptoms of psychosis. She acknowledged passive suicidal ideation but denied intent, access or plan and was judged to be of no danger to herself. She also denied current homicidal ideation and was judged to be of no danger to others. The examiner indicated that she became tearful. She received an axis I diagnosis of major depressive disorder, recurrent and anxiety disorder not otherwise specified (NOS). She was also assigned a GAF score of 50. In summary, the examiner stated that the Veteran appeared very stressed, depressed, and anxious regarding the responsibilities she had presently in front of her. Even though her major depressive disorder, recurrent, and anxiety disorder NOS were at least as likely as not to have started during her military service, they were currently being aggravated by situational circumstances. 

A VA addendum opinion regarding the effects of the Veteran's mental disorder and social functioning was provided in August 2011. The examiner stated that there were mental disorder signs and symptoms that were transient or mild and decreased work efficiency and ability to perform occupational tasks only during periods of significant stress. The Veteran reported having to discontinue competitive employment in April 2011 due to multiple factors including taking care of her mother who had dementia, managing her son's psychiatric care and rehabilitation, and because her own depressive symptoms were becoming more significant. During this time of significant stress, the Veteran's own mental disorder symptoms became more significant and she had decreased work efficiency. Until that time of great stress, the examiner noted that the Veteran was competitively employed and was successful in the jobs that she held. The Veteran reported that she was overwhelmed with her son's psychiatric illness and her mother's dementia that she felt she could no longer perform occupational tasks as required by her job and she voluntarily resigned. The examiner acknowledged that the Veteran was "overwhelmed" with familial issues, which had been impacting her financially, emotionally, mentally, as well as taking up much of her time in a caretaking role. She continued to state that even though her major depressive disorder, recurrent, and anxiety disorder NOS, were at least as likely as not to have started during her military service, they were currently being aggravated by situational circumstances that were not static and would change over time. The Veteran's last position (from which she voluntarily resigned) required her to supervise multiple people. The examiner pointed out that at the same time the Veteran was performing stressful tasks at work, she was successfully navigating the complicated health care system for the benefit of both her mother and her son. She opined that the Veteran's psychiatric status did not render it impossible for the average person to follow a substantially gainful occupation nor rendered her unable to secure or follow a substantially gainful occupation consistent with levels of experience and education. She further concluded that there was neither an unusual or exceptional disability picture warranting the assignment of a total disability rating. 

In a September 2011 VA addendum opinion, the examiner indicated that while the Veteran no longer met the criteria for PTSD, she still had some symptoms of anxiety that met the criteria for anxiety disorder NOS. Thus, the examiner opined that it was at least as likely as not that her anxiety disorder NOS was a progression of her prior PTSD. The examiner further noted that her symptoms of anxiety disorder NOS were being aggravated by familial crises.

A September 2011 letter from private treating physician Dr. D. B. of Atlantic Health Services indicates that he treated the Veteran for major depression between July 2009 and December 2008 with antidepressant medication. He further indicated that she responded well. She began seeing him again for treatment in 2011. 

A September 2011 letter from social worker, V. C., shows that the Veteran's most recent treatment had focused solely on her son's substance abuse and mental health disorder. The Veteran participated in Intensive Outpatient Therapy during the month of April 2011. At the time her GAF score was 45 and she was too depressed to work. Her husband had to take over all aspects of running the household. The Veteran felt helpless, hopeless, guilty, and expressed suicidal ideations. The Veteran discussed the distracting nature of work but finding substantially gainful employment seemed remote.

The Veteran was afforded a VA mental disorders examination in November 2013. Her level of occupational and social impairment was described as having deficiencies in most area such as work, school, family relations, judgment, thinking, and/or mood. The Veteran reported that her marriage was strained and that she and her husband were in the process of getting a divorce. She attributed their decision to divorce to several factors, including but not limited to increased marital strain associated with recent psychosocial stressors. She described that she struggled to cope with stressful life events, yet often felt depressed and overwhelmed. She reported that her mother was no longer living with her and had been living at a local assisted care facility since April 2012. The Veteran expressed ongoing concern regarding her son and the possibility of future exacerbations of his psychiatric condition. She described her relationship with him as a "nightmare." She further reported that she had been unemployed for two years and was not collecting unemployment at that time. Instead, she had spent much of her time providing necessary care-taking for her mother and son. She indicated that she began working as a retina specialist part-time in approximately June 2011 and held that position for about one month. She decided to quit after it became too difficult for her to work, care for her mother, and address recent home issues. After this time, the Veteran reported that she remained unemployed and spent time taking care of her mother. She stated that she began her current position in August 2012 as a Veterans Service Officer with the Connecticut Department of Veterans Affairs and was working full-time. She described an incident when she filed a complaint concerning her employer's job hiring practices. She also denied threatening others in the work place. She noted that she did not "cope well with things that [frustrated] her" and noticed a change in her work assignments as well as level of interpersonal interactions with others in the workplace. She further denied any history of problems with tardiness and/or attendance. The Veteran reported that she had been accused of threatening others in the work place and described herself as "frozen out" of interpersonal contact with others in the workplace. She intended to continue with her current employment for the foreseeable future. She had also been applying for other jobs, had one job interview, but no job offer. The Veteran reported that she had been attending a weekly women's group under the supervision of a social worker for about one and a half years. The examiner noted several symptoms that were attributable to the Veteran's mental diagnoses of major depressive disorder and anxiety NOS. Such included depressed mood, anxiety, panic attacks that occur weekly or less often, chronic sleep impairment, mild memory loss, impaired judgment, disturbances of motivation and mood, difficulty in establishing and maintaining effective work and social relationships, difficulty in adapting to stressful circumstances, and impaired impulse control. The examiner indicated that the Veteran was capable of managing her own financial affairs. 

In summary, the examiner indicated that the Veteran had a remarkably similar clinical presentation as compared to her earlier July 2011 VA examination. She "continued to describe ongoing difficulties with depression and anxiety for which the DSM-IV diagnoses of major depressive disorder and anxiety NOS [were] offered." Given the Veteran's report of periods of remarkable for acute irritability as well as mention of prior consideration of symptoms of mania/hypomania, the examiner wished to note that provisional consideration was given to the diagnosis of bipolar II disorder, as well as, mood disorder NOS. However, at the present time, there was insufficient evidence to indicate that the Veteran formally met the DSM-IV criteria for bipolar II disorder and/or mood disorder NOS. The examiner also found it important to mention that the Veteran described sub-clinical symptoms of alcohol abuse and/or dependence. However, there was not sufficient evidence to warrant a formal DSM-IV diagnosis related to the Veteran's alcohol use. The Veteran was diagnosed with major depressive disorder and anxiety NOS. She was assigned a GAF score of 53.

In regards to the Veteran's course of symptoms since her last July 2011 VA examination, the examiner indicated that the Veteran believed her symptoms had fluctuated based on her current life circumstances. She explained that she often felt some level of depression on a daily basis with no periods of remission. However, she noted that her psychiatric symptoms often quickly exacerbated in the context of psychosocial stressors and described a subjective experience of "not being able to cope with things like everyone else" despite putting forth extra effort during such periods. The examiner noted that "on a positive note," the Veteran's mother was now living at an assisted care facility and that reduced the Veteran's caregiving burden to a degree. The examiner pointed out that the Veteran had also returned to work and had been able to maintain steady employment for over a year. Nonetheless, she described intense interpersonal conflict in the workplace including allegations that she threatened others (which she believed were unfounded). She had not required any emergency, acute, and/or inpatient psychiatric care since her most recent July 2011 VA examination. The examiner noted that the Veteran continued to be followed by a private clinician, received psychotropic medications, and started attending a women's support group about one year ago. Thus, the examiner opined that it was at least as likely as not that the Veteran's psychiatric symptoms (and disability resulting from such) had remained at about the same level as described in her prior July 2011 VA examination, with fluctuations in functioning noted during periods of increased stress during which time the Veteran experienced increased symptomatology and difficulties in coping and interpersonal relationships. The examiner continued to state that while the Veteran had been able to return to gainful employment, her return to employment was marked by additional stressors and interpersonal difficulties. It was also noted that there was a recent emergence of possible alcohol addiction problems since her prior VA examination, which was currently below the threshold to warrant a formal DSM-IV diagnosis related to addictions, yet the examiner found it important to monitor. Thus, the examiner concluded and opined that the Veteran's symptoms and associated disabilities with her service-connected psychiatric symptoms had remained relatively stable since 2011.

Based on a review of the evidence, the Board concludes that a rating of 70 percent, but no higher, is warranted throughout the appeal period. In this case, the level of impairment, symptoms shown, and GAF scores throughout the Veteran's treatment records during this appeal and during the 2011 and 2013 VA examinations have been consistent. The effect of the Veteran's psychiatric disability on her occupational and social functioning has appeared to be consistent throughout the appeal period. In this case, the symptoms shown throughout the appeal period indicate that the Veteran's psychiatric disability results in occupational and social impairment, with deficiencies in most areas, such as work, family relations, judgment, thinking, or mood. The Board notes that the November 2013 VA examiner opined that it was at least as likely as not that the Veteran's psychiatric symptoms (and disability resulting from such) had remained at about the same level as described in her prior July 2011 VA examination. In light of the fact that the RO awarded a 70 percent rating based on the results of the November 2013 VA examination, considering that the impairment shown during that examination is similar to the impairment that has been shown since the July 2011 VA examination obtained upon the Veteran's filing of her increased rating claim, when affording the Veteran the benefit-of-the-doubt, the Board concludes that a 70 percent rating is warranted throughout this appeal. 

However, the criteria for a 100 percent disability rating have not been met at any time during the period under consideration. No medical professional has provided any opinion indicating that the Veteran has total occupational and social impairment. None of her treatment records or VA examinations have shown symptoms as gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting oneself or others; intermittent inability to perform activities of daily living; disorientation to time or place; memory loss for names of close relatives, own occupation, or own name. The Board acknowledges that the July 2011 VA examination shows that the Veteran had passive suicidal ideation. However, even with such report, the examiner did not opine that the Veteran is in a persistent danger of hurting others. Indeed, the Veteran reported having no plan to carry through her suicidal ideation and no intention of self-harm, indicating that she was in no danger to herself. Additionally, the Veteran's current symptoms are not of the same frequency, nature, or duration as those that warrant a 100 percent rating. Specifically, while the Veteran's depressed mood, anxiety, panic attacks that occur weekly or less often, chronic sleep impairment, mild memory loss, impaired judgment, disturbances of motivation and mood, difficulty in establishing and maintaining effective work and social relationships, difficulty in adapting to stressful circumstances, and impaired impulse control, she is still able to live alone, take care of herself, and maintain employment. Given the frequency, nature, and duration of the Veteran's symptoms, the Board finds that her psychiatric disability has not productive of total occupational and social impairment throughout the period on appeal.

The Board notes that the reported GAF score of 53 is indicative of moderate symptoms; however, the Veteran has also had GAF scores of 45 and 50, indicative of serious symptoms, consistent with a 70 percent rating. The Board also notes that, while important, the GAF scores assigned in a case are not dispositive of the evaluation and must be considered in light of the actual symptoms of the Veteran's disorder. See 38 C.F.R. § 4.126(a).

Accordingly, and based on this evidentiary posture, the Board concludes that the totality of the evidence shows that a 70 percent rating, but no higher, is warranted throughout the appeal period.

The Board must also determine whether the schedular evaluation is inadequate, thus requiring that VA refer a claim to the Chief Benefits Director or the Director, Compensation and Pension Service, for consideration of "an extra-schedular evaluation commensurate with the average earning capacity impairment due exclusively to the service-connected disability or disabilities." 38 C.F.R. § 3.321(b)(1).

An extra-schedular evaluation is for consideration where a service-connected disability presents an exceptional or unusual disability picture. An exceptional or unusual disability picture occurs where the diagnostic criteria do not reasonably describe or contemplate the severity and symptomatology of the Veteran's service-connected disability. Thun v. Peake, 22 Vet. App. 111, 115 (2008).

If there is an exceptional or unusual disability picture, then the Board must consider whether the disability picture exhibits other factors such as marked interference with employment or frequent periods of hospitalization. Id. at 115-116. When either of those elements has been satisfied, the appeal must be referred for consideration of the assignment of an extraschedular rating. Otherwise, the schedular evaluation is adequate, and referral is not required. 38 C.F.R. § 3.321(b)(1); Thun, 22 Vet. App. at 116.

In this case, the schedular evaluation is not inadequate. An evaluation in excess of that assigned is provided for certain manifestations of the service-connected disability, such as additional social and/or occupational impairment, but the medical evidence reflects that those manifestations are not present in this case. Additionally, the diagnostic criteria adequately describe the severity and symptomatology of the Veteran's disorder. As the rating schedule is adequate to evaluate the disability, referral for extraschedular consideration is not in order.


TDIU

Governing Law and Regulations

The VA will grant a total rating for compensation purposes based on unemployability when the evidence shows that the veteran is precluded from obtaining or maintaining any gainful employment consistent with his education and occupational experience by reason of his service-connected disabilities. 38 C.F.R. §§ 3.340, 3.341, 4.16. If the appropriate rating under the pertinent diagnostic code of the rating schedule is less than 100 percent, the issue of unemployability must be determined without regard to the advancing age of the veteran. 38 C.F.R. §§ 3.341(a), 4.19. Marginal employment shall not be considered substantially gainful employment. 38 C.F.R. § 4.16(a). 

According to the applicable laws and regulations, a total rating for compensation may be assigned where the schedular rating is less than total, when it is found that the disabled person is unable to secure or follow a substantially gainful occupation as a result of a single service-connected disability ratable at 60 percent or more or as a result of two or more disabilities, provided at least one disability is ratable at 40 percent or more, and there is sufficient additional service-connected disability to bring the combined rating to 70 percent or more. 38 C.F.R. §§ 3.340, 4.16(a). 

Analysis

In this case, the Veteran contends that she is unable to be employed due to her service-connected anxiety disorder NOS and major depressive disorder.

The Veteran is only service-connected for anxiety disorder NOS and major depressive disorder, which is currently rated as 70 percent disabling. Thus, the schedular criteria are met. See 38 C.F.R. § 4.25 (2014).

Upon careful review, the Board finds that the evidence does not show that the Veteran is precluded from employment by her anxiety disorder NOS and major depressive disorder. 
The July 2011 VA PTSD examination report shows that the Veteran reported working from August 2003 to August 2006 with a kitchen company in sales. She then moved on to work with the Connecticut Department of Veterans Affairs as a Veterans Service Officer from January 2007 through April 2010. She then decided to make a career move to be the director of sales and marketing with Benchmark Senior Living and worked there from April 2010 until February 2011. The Veteran then decided to go back to work with Veterans and worked for Alpha Disability as a Veteran Advocate Supervisor in March 2011 through April 2011. She reported that she was overwhelmed with her son's psychiatric illness and her mother going into dementia as well as her own psychiatric illness becoming too great for her to continue working, and prior to being fired she decided to leave her job as a Veteran's Advocate Supervisor. She was currently unemployed. She reported having to discontinue working at competitive employment in April 2011 due to multiple factors including taking care of her mother who had dementia, managing her son's psychiatric care and rehabilitation, and because her own depressive symptoms were becoming more significant.

The August 2011 VA addendum opinion shows that the Veteran's last position (from which she voluntarily resigned) required her to supervise multiple people. The examiner pointed out that at the same time the Veteran was performing stressful tasks at work, she was successfully navigating the complicated health care system for the benefit of both her mother and her son. She opined that the Veteran's psychiatric status did not render it impossible for the average person to follow a substantially gainful occupation nor rendered her unable to secure or follow a substantially gainful occupation consistent with levels of experience and education. She further concluded that there was neither an unusual or exceptional disability picture warranting the assignment of a total disability rating. 

At the November 2013 VA examination, the Veteran reported that she had also been applying for other jobs, had one job interview, but no job offer. Additionally, the examiner pointed out that the Veteran returned to work and had been able to maintain steady employment for over a year despite describing intense interpersonal conflict in the workplace including allegations that she threatened others (which she believed were unfounded). She had not required any emergency, acute, and/or inpatient psychiatric care. The examiner further stated that while the Veteran had been able to return to gainful employment, her return to employment was marked by additional stressors and interpersonal difficulties. 

Overall, the evidence shows that the Veteran has been gainfully employed full-time as a Veterans Service Officer with the Connecticut Department of Veterans Affairs since August 2012. The Board has considered the periods of which the Veteran was unemployed, but finds that such was voluntary due to her familial problems, as the VA examiners have indicated. Indeed, the Veteran herself reported that her decision to quit working was largely in part to being overwhelmed with her son's psychiatric illness and her mother going into dementia. The August 2011 VA examiner clearly opined that the Veteran's psychiatric status did not render it impossible for the average person to follow a substantially gainful occupation nor rendered her unable to secure or follow a substantially gainful occupation consistent with levels of experience and education. She further concluded that there was neither an unusual or exceptional disability picture warranting the assignment of a total disability rating. Moreover, the November 2013 VA examiner pointed out that the Veteran returned to work and had been able to maintain steady employment for over a year despite describing intense interpersonal conflict in the workplace. The Veteran further reported that she had been seeking new employment by applying for other jobs and had one interview. As the evidence relating to this specific matter is not in equipoise, the provisions of 38 U.S.C.A. § 5107(b) regarding resolution of reasonable doubt are not applicable.

In conclusion, the probative evidence does not show she is unable to obtain and maintain a substantially gainful occupation because of the severity of her service-connected psychiatric disability. There is no basis to refer his TDIU claim to the Director of Compensation of Pension Service for consideration of an extraschedular grant of TDIU under § 4.16(b). The appeal is denied.





ORDER

Subject to the law and regulations governing payment of monetary benefits, prior to November 4, 2013, a 70 percent rating for anxiety disorder NOS and major depressive disorder is granted.

A rating in excess of 70 percent for anxiety disorder NOS and major depressive disorder is denied.

Entitlement to a TDIU is denied.



____________________________________________
THOMAS H. O'SHAY
Acting Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs